UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LYLE E. DICKSON,

       Plaintiff,

CASE NO. 1:13-CV-644

v.

HON. ROBERT J. JONKER

JOHN WOJCIK, individually and as
General Counsel for the State of Michigan
Army National Guard, and the
State of Michigan Army National Guard,

       Defendants.

_____/

## OPINION

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (docket # 24). The Motion is fully briefed. After a thorough review of the record and careful consideration of the applicable law, the Court finds that oral argument is not necessary to resolve the motion. The motion is ready for decision.

### BACKGROUND

Plaintiff Dickson brings a series of claims arising out of his service with and separation from Defendant Michigan National Guard (the "Guard"). Plaintiff filed a Second Amended Complaint laying out the factual details of his claims.[1] According to Plaintiff's Second Amended Complaint, he was employed as a Military Police Sergeant until September 2008, when Plaintiff received a promotion to the position of First Lieutenant in the Judge Advocates Corps. (Second Am. Compl.,

---

[1] Plaintiff's Second Amended Complaint states above the signature line that it is "[s]ubmitted and sworn to based upon the verified information and on belief;" but it is not notarized or otherwise certified and therefore is not a verified complaint. Plaintiff's original Complaint is verified.

docket # 18, at ¶ 3.) Defendant LTC John Wojcik served as general counsel for Defendant Michigan Army National Guard (the "National Guard") and as Plaintiff's supervisor. (*Id.* at ¶ 2.) Days before he was commissioned as a First Lieutenant in the JAG Corps, Plaintiff was ordered to have a physical examination. (*Id.* at ¶ 4.) During the exam, Plaintiff "was forced, with great nervousness, embarrassment and hesitation, to publicly report to medical personnel that he was the victim of a sexual assault as a child." (*Id.*) Plaintiff also "expressed concerns about the physical exam process based upon an incident that had occurred at his enlistment physical exam." (*Id.*) Plaintiff "was also required to give employment history involving his career as a Police Officer and Attorney." (*Id.*) In January 2009, the Guard discontinued Plaintiff's commission "for allegedly failing to reveal a contempt conviction and other allegations by Brigadier General Anderson." (*Id.* at ¶ 5.) Plaintiff "was honorably discharged and not allowed to reenlist in his prior position, although he was eligible and BG Anderson indicated he would authorize it." (*Id.* at ¶ 5.)

According to Plaintiff, the allegations based on which the Guard discontinued his commission were false. (*Id.* at ¶ 6.) Plaintiff asserts that "the GUARD refused, and continues to refuse, to identify the source of the false statements." (*Id.*) In July 2012, "Plaintiff filed a Motion to expunge the contempt conviction in the court of original jurisdiction," which Plaintiff identifies as Michigan's 53d District Court. (*Id.* at ¶¶ 7-8.) Judge Brennan of the 53d District held a hearing on the motion to expunge the contempt conviction. (*Id.* at ¶ 9.) During the hearing, "Judge Brennan stated that Plaintiff had been dismissed from the GUARD for failing to reveal the contempt conviction." (*Id.*) "Plaintiff denied the statement [that he had failed to reveal the contempt conviction.]" (*Id.*) Plaintiff inquired who provided the court with information that Plaintiff had been dismissed for failing to reveal the contempt commission. (*Id.* at ¶ 10.) Judge Brennan "asked if

2

'John Wojcik' would have knowledge about the facts, thus naming for the first time the source of the false information to Plaintiff." (*Id.*) The court "refused to expunge the conviction, at least in part [] based upon the false statement by Defendant WOJCIK and/or his agents[] or assigns." (*Id.* at ¶ 11.)

According to Plaintiff, the affidavit of Major Joseph Ljubicic "verifies that Plaintiff did, in fact, disclose the contempt citation prior to his commissioning as Ljubicic is the person who completed Plaintiff's application for commissioning."[2] (*Id.* at ¶ 12.) Plaintiff says he "also disclosed the contempt conviction prior to his re-enlistment as a Military Police Specialist years earlier" and "was an exemplary soldier who was promoted before his peers to the rank of Sergeant and also served as a Unit Career Counselor for other soldiers prior to commissioning." (*Id.* at 14.) Plaintiff "has requested several investigations into the matter via military and political channels," but "the situation was covered up by Defendant(s)." (*Id.* at ¶ 15.)

Based on these assertions, Plaintiff alleges ten separate causes of action against Defendants Wojcik and the Guard. Plaintiff claims Intentional or Negligent Infliction of Emotional Distress (Count I); Defamation (Count II); Invasion of Privacy - False Light (Count III); Tortious Interference with a Contracted Business Relationship (Count IV); Business Defamation or Injurious Falsehood (Count V); Breach of Contract or Detrimental Reliance (Count VI); Violation of First Amendment under 42 U.S.C. § 1983 (Count VII); Conspiracy to improperly discharge Plaintiff from military service (Count VIII); Violation of Right to Privacy Act of 1974 (Count IX); and Violation of Due Process (Count X). Plaintiff seeks damages for the alleged loss of his "military career; retirement; pay; benefits; social prestige; promotions; comraderie [sic] of fellow soldiers" and for "severe

---

[2]Major Ljubicic's affidavit is attached as Exhibit 1 to Plaintiff's original Complaint.

3

emotional distress." Defendants move to dismiss the case under FED. R. CIV. P. 12(b)(1) and 12(b)(6).

## LEGAL STANDARD

A challenge to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) may be a facial attack, challenging the sufficiency of a plaintiff's factual allegations, or a factual attack, challenging the fact of subject matter jurisdiction. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 324 (6th Cir. 1990). When a defendant mounts a factual attack on subject matter jurisdiction, a court may weigh the evidence regarding jurisdiction, including affidavits and other evidence outside the pleadings, and the plaintiff bears the burden of proving jurisdiction. *Ritchie*, 15 F.3d at 598; *Rogers v. Stratton Indus.*, 798 F.2d 913, 916 (6th Cir. 1986).

FED. R. CIV. P. 8(2)(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To satisfy this standard, a complaint need not contain detailed factual allegations, but it must contain "more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Hensley Mfg., Inc. v. Propride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations in the complaint. *Id.* "[T]o survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level,' . . . and 'to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting

4

*Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "The plausibility standard is not akin to a 'probability requirement.'" *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556-57). The Court need not accept as true legal conclusions framed as factual allegations. *Hensley Mfg.,* 579 F.3d at 609.

### ANALYSIS

#### 1.     Tort Claims (Counts I - V)

The Federal Tort Claims Act ("FTCA") creates a waiver of sovereign immunity under which the United States may be held liable for "tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. 2674; *see also* 28 U.S.C. § 1346(b)(1) (granting exclusive jurisdiction to the federal district courts 'of civil actions on claims arising against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred[,]" subject to the procedures set forth in the FTCA). The FTCA contains an exception for intentional torts, stating that the United States has not waived sovereign immunity for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h).

The FTCA also excepts from the waiver of immunity claims "arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(j). The Supreme Court amplified this exception in *Feres v. United States*, 340 U.S. 135

(1950). Under the *Feres* doctrine, "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146. In a later case applying the *Feres* doctrine, the Supreme Court explained that "a service member is injured incident to service" if the injury is "because of his military relationship with the Government." *United States v. Johnson*, 481 U.S. 681, 689 (1987). The Sixth Circuit observes that:

> [r]eview of these Supreme Court precedents makes it clear that in recent years the Court has embarked on a course dedicated to broadening the *Feres* doctrine to encompass, at a minimum, *all* injuries suffered by military personnel that are even remotely related to the individual's *status* as a member of the military, without regard to the location of the event, the status (military or civilian) of the tortfeasor, or any nexus between the injury-producing event and the essential defense/combat purpose of the military activity from which it arose.

*Major v. United States*, 835 F.2d 641, 644-45 (6th Cir. 1987) (emphasis in original).

A plaintiff must exhaust administrative remedies before filing suit based on tort claims against the United States:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency . . . .

28 U.S.C. § 2675(a).

### A. LTC Wojcik is not a proper defendant.

Federal employees are immune from liability for torts they commit when acting within the scope of their federal employment. 28 U.S.C. § 2679(b)(1). Any private remedy against a federal employee for a tort committed during the scope of his or her federal employment must be sought against the United States under the FTCA. *Rector v. United States*, 243 F. App'x 976, 978 (6th Cir.

July 17, 2007). A private tort action can be brought against the employee only when the employee acts outside the scope of employment. *Id.* "Whether an employee was acting within the scope of his employment is a question of law, not fact, made in accordance with the law of the state where the conduct occurred." *RMI Titanium Co. v. Westinghouse Electric Corp.*, 78 F.3d 1125, 1143 (6th Cir. 1996). Under Michigan law, a person is acting within the scope of his or her employment if he or she acts "while engaged in the service of his master, or while about his master's business." *Rector*, 243 F. App'x at 979 (quoting *Barnes v. Mitchell*, 341 Mich. 7, 67 N.W. 2d 208, 210 (1954)). Employment encompasses acts taken to further the employer's purpose. *Id.* (citing *Backus v. Kauffman*, 238 Mich. App. 402, 605 N.W. 2d 690, 693-94 (1999)). This holds true even if the actions amount to intentional torts or disobedience of the employer's express or implied orders. *Id.*

"Upon certification by the U.S. Attorney General or his delegate (here, the U.S. Attorney, [W.D. Mich.]), a tort suit filed in state court will be removed to federal court, and the United States will be substituted for the original defendant." *Id.* at 978; 28 U.S.C. § 2679(d). This certification is conclusive for the purpose of removal, but it creates a rebuttable presumption for the purpose of defendant substitution. *Id.* "Thus, to contest the propriety of substitution, the plaintiff must produce evidence that the employee was not acting in the scope of employment." *Singleton v. United States*, 277 F.3d 864, 871 (2002). If the plaintiff makes such a showing, the government must then produce evidence for its certification. *Id.*

Here, the U.S. Attorney for the Western District of Michigan removed Mr. Dickson's state court complaint and certified that LTC Wojcik was acting in the scope of his federal employment during all of the actions on which Mr. Dickson bases his claims (docket # 1). The government has filed additional evidence that LTC Wojcik was acting within the scope of his federal employment,

including, without limitation, the affidavit of Major General Gregory Vadnais (docket # 16-2), to whom LTC Wojcik reported; and the affidavit of LTC Wojcik himself (docket # 16-1). The FTCA provides explicitly that state National Guard members are considered federal employees when they are engaged in "training or duty" as defined under 32 U.S.C. § 502. 28 U.S.C. § 2761 (defining "employee of the government"). LTC's Military Orders specify that he was serving under 32 U.S.C. § 502. (docket # 16-3, Barr decl. and Wojcik Military Orders.) Mr. Dickson has adduced no evidence that LTC Wojcik was not acting in the scope of his federal employment. He speculates that LTC Wojcik may have "lie[d] to the employer about his activities" or that LTC Wojcik's supervisors may have "been involved in the conspiracy to cover up Wojcik's actions and now vouch for him or were, in fact, victims of his lies" (docket # 27, Page ID 145). Such speculation is not evidence, and it is not enough to rebut the presumption that LTC Wojcik was acting within the scope of his federal employment. Nor does it begin to overcome the additional evidence the government submitted demonstrating that LTC Wojcik was acting within the scope of his federal employment. Accordingly, the United States is the only proper defendant as to the tort claims Plaintiff brings.

### B. The United States has sovereign immunity.

"It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Sovereign immunity is narrowly construed. *See*, *e.g.*, *Reed v. Reno*, 146 F.3d 392, 398 (6th Cir. 1998) ("The United States can be sued only 'when it has expressly given its consent to be sued' . . . . The waiver must be express, clear and unequivocal. Further, the language of any waiver of sovereign immunity is strictly construed in

8

favor of the United States.") (citations omitted). The FTCA's waiver of sovereign immunity explicitly excludes "any claim arising out of" intentional torts including, without limitation, "abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.'" 28 U.S.C. § 2680(h). All of Plaintiff's tort claims "arise out of" the same conduct – allegedly false assertions by LTC Wojcik that resulted in the discontinuation of Plaintiff's commission – on which he premises his claims for defamation, slander, misrepresentation, and tortious interference. There is no independent conduct out of which Plaintiff's claims arise. Plaintiff's tort claims therefore fall within the carve-out under 28 U.S.C. 2680(h). *See Metz v. United States*, 788 F.2d 1528, 1534 (finding that "a cause of action which is distinct from one of those excepted under § 2680(h) will nevertheless be deemed to 'arise out of' an excepted cause of action when the underlying government conduct which constitutes an excepted cause of action is 'essential' to plaintiff's claim.") (quotation omitted). Because the United States has sovereign immunity as to Plaintiff's tort claims, the claims must be dismissed.

### C. Plaintiff failed to exhaust administrative remedies.

Dismissal of Plaintiff's tort claims is also appropriate based on failure to exhaust. The unrebutted record reflects that Mr. Dickson failed to exhaust administrative remedies as required under the FTCA. The declaration of Lorenzo Ferguson, Chief of the Operations and Records Branch, United States Army Claims Service, states that Mr. Ferguson has access to records of all claims against the U.S. for which the Army has investigative responsibility, "includ[ing] claims under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, and other related tort claims statutes." (Ferguson decl., docket # 16-4, at ¶ 1.) Mr. Ferguson avers further that "[a] thorough search of all records available to [the Army Claims Service] has found that no administrative claim was filed by

9

LYLE E. DICKSON" under these statutes. (*Id.* at ¶ 2.) Mr. Dickson has offered no evidence to the contrary. Because Mr. Dickson failed to exhaust administrative remedies, the Court must dismiss his tort claims. *See* 28 U.S.C. § 2675(a).

### 2. The *Feres* Doctrine bars Plaintiff's claims.

The *Feres* doctrine also requires dismissal of Plaintiff's tort claims. The *Feres* doctrine applies both to claims of intentional torts and claims of negligence. *Mackey v. United States,* 226 F.3d 773, 776 (2000). Under the *Feres* doctrine, "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146. All of Mr. Dickson's claimed injuries arise out of activity incident to service. Rationales underpinning the doctrine include, among others: "(1) the peculiar and special relationship of soldier to his superiors; (2) the effects of the maintenance of such suits on discipline; and (3) the extreme results that might obtain if suits under the FTCA were allowed for negligent orders given or negligent acts committed in the course of military duty." *Mackey, 226 F.3d at 776* (citing *United States v. Shearer*, 473 U.S. 52, 57 (1985)). All of these rationales are in play in this case and further support dismissal.

In this case, the *Feres* doctrine (or its *Chappell* analogue in constitutional claims, *infra*) actually mandates dismissal of all of Plaintiff's claims, no matter how he characterizes them. All of Mr. Dickson's alleged claims and injuries arise out of his relationship to the Michigan Army National Guard; his claims arose "because of his military relationship with the Government." *Lovely v. United States*, 570 F.3d 778, 784 (2009) (quotation omitted). The factual underpinnings all involve Plaintiff's relationship to his military superiors. Judicial review of these matters would trigger all the

problems *Feres* (and *Chappell*) prevent. Accordingly, the concepts underpinning the *Feres* doctrine also dictate that Mr. Dickson's remaining claims be dismissed.

### 3. Separate Reasons for Dismissal of Counts VI-X

Plaintiff's Claims VI-X fail for reasons in addition to those already mentioned. Mr. Dickson's claims for breach of contract (Count VI) and violation of due process (Count X) in essence repackage his tort claims and must be dismissed for precisely the same reasons his tort claims fail,[3] and because of the *Feres* doctrine. Mr. Dickson's claim of "conspiracy to improperly discharge Plaintiff from service" (Count VIII) is predicated on his tort claims and cannot proceed in their absence.

Mr. Dickson's First Amendment claim (Count III) alleges that Defendants violated his First Amendment rights "by threatening to report, and then reporting Plaintiff to the Michigan Attorney Grievance Commission in an attempt to cause Plaintiff to lose his license to practice law and intimidate the Plaintiff when Plaintiff refused to stop reporting Defendant's [sic] violation and/or suspected violations of military and state law to military, state and federal organizations." (docket # 18 at ¶ 48.) In *Chappell v. Wallace*, 462 U.S. 296, 299 (1983), the Court applied an analysis similar to the *Feres* doctrine to constitutional claims incident to military service and held "that enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations." *Chappell*, 462 U.S. at 305. In reaching this conclusion, the Court emphasized [t]he need for special regulations in relation to military discipline, and the consequent need and justification for a special and exclusive system of military justice." *Id.* at 300. Mr. Dickson's claim under the First Amendment (Count VII) cannot survive under *Chappell* and its

---

[3] Indeed, his breach of contract claim includes allegations of negligence, and his due process claim includes allegations of defamation.

progeny.  *See, e.g., Leistiko v. Stone*, 134 F.3d 817 (6th Cir. 1998) (dismissing federal due process claim based upon *Chappell*).

Mr. Dickson's claim of a violation of the Right to Privacy Act of 1974 (Count IX) also fails. Mr. Dickson bases his Privacy Act claim on allegations that Defendants violated "Plaintiff's right to privacy by releasing Plaintiff's medical and military records to other military services; the 53d District Court[;] and [] the Michigan Attorney Grievance Commission without Plaintiff's consent[;]" (*Id.* at ¶ 55); that Defendants "had a duty to keep Plaintiff's medical and military records confidential;" (*Id.* at ¶ 56); and that "this unauthorized release caused severe damage to Plaintiff's military and civilian career prospects." (*Id.* at ¶ 57). The Privacy Act of 1974 creates a cause of action only against federal agencies. 5 U.S.C. §§ 552a, 552(f). *See also Williams v. United States*, No. 6:10-CV-168-KSF, 2011 WL 1113946, at *7 (E.D. Ky., March 24, 2011) (citations omitted). Because individuals have no Privacy Act liability, LTC Wojcik is not a proper defendant and must be dismissed. *Id*. The *Feres* doctrine independently bars Mr. Dickson's Privacy Act claim in this case. *See Uhl v. Swanstrom*, 79 F.3d 751 (8th Cir. 1996) (upholding dismissal of National Guard member's Privacy Act claim for use or disclosure of incorrect military records based on application of *Feres* doctrine). While there are cases finding that *Feres* generally does not bar a Privacy Act claim, *see, e.g, Cummings v. Dep't of the Navy*, 279 F.3d 1051 (D.C. Cir. 2002), the Sixth Circuit has not ruled on the question. Moreover, *Cummings* would not read on this case anyway. *Cummings* reasoned that the rationales that apply in FTCA cases typically do not apply in Privacy Act cases. *Cummings*, 279 F.3d at 1055-56. But Mr. Dickson's Privacy Act claim is different, because it intertwines inextricably with his tort allegations asserting that a superior officer improperly caused his dismissal. It necessarily raises all of the *Feres* doctrine's concerns.

Finally, all of Mr. Dickson's claims amount to challenges to internal military personnel decisions and must be dismissed on this ground as well. *See Hoffman v. Stump*, No. 97-2177, 1998 WL 869972, at *4 (6th Cir., Dec. 2, 1998) ("[S]ince *Chappell*, this Court has dismissed officers' federal claims when the officers challenge internal military disciplinary or personnel decisions); *Bowers v. Wynne*, 615 F.3d 455, 465-66 (6th Cir. 2010) (upholding dismissal of wrongful discharge claims by former air reserve technician because adverse employment action implicated his military status and review was therefore barred); *Bradley v. Stump*, No. 97-1472, 1998 WL 385903, at *3 (6th Cir. July 1, 1998) ("[t]he National Guard is 'irreducibly military.' An executive decision by an adjutant general to relieve a Guard officer . . . is simply an adverse personnel action. Damages are not available for adverse personnel actions in the military.")). Mr. Dickson's claims all arise out of the National Guard's decision to discontinue his commission. This is a classic military personnel decision, and Mr. Dickson's claims must be dismissed.

## CONCLUSION

For all of these reasons, the Court concludes that dismissal of the case under FED. R. CIV. P. 12(b)(1) and 12(b)(6) is appropriate.

Dated:  May 27, 2014           /s/ Robert J. Jonker
                               ROBERT J. JONKER
                               UNITED STATES DISTRICT JUDGE